**AFFIDAVIT OF SPECIAL AGENT JEREMY D. BRISSON IN SUPPORT OF AN APPLICATION FOR A CRIMINAL COMPLAINT**

I, Jeremy D. Brisson, hereby state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent with the federal Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"). I have been employed as an ATF Special Agent since 2023. As an ATF Special Agent, my duties include the investigation of violations of laws related to firearms trafficking, firearm possession by prohibited persons, and the use of firearms in drug trafficking crimes. I was the distinguished honor graduate of the ATF National Academy and of the Federal Law Enforcement Training Center. I possess an undergraduate degree in Finance. I am currently assigned to Woburn Field Office in the Boston Field Division of the ATF. This group works with other federal, state, and local police departments north of the City of Boston to investigate and prosecute violations of federal firearms, explosives, and controlled substance laws. During my tenure with ATF, I have received training in investigations involving federal firearms, explosives, arson, and narcotics violations. These violations include but are not limited to the unlawful possession of firearms by prohibited individuals, straw purchasing (which is the illegal purchasing of a firearm on behalf of another individual), firearms trafficking, and the use of firearms in furtherance of criminal acts such as the distribution of controlled substances. I have also developed an understanding of the methods and techniques associated with the organization of conspiracies, the unlawful possession and trafficking of firearms, and the actions of criminal organizations.

2. Prior to my employment with ATF, I had been in law enforcement in several capacities for approximately thirteen years. I was employed as a Deputy United States Marshal with the United States Marshal Service, a Federal Air Marshal with the U.S. Department of Homeland Security, and as a municipal law enforcement officer in the state of New Hampshire.

3. Since July 2024, ATF has been investigating Aaron BROWN ("BROWN") for illegal firearms distribution. I submit this affidavit in support of an application for a criminal complaint charging BROWN with being a Felon in Possession of a Firearm and/or Ammunition, in violation of 18 U.S.C. § 922(g)(1), and Dealing Firearms without a License, in violation of 18 U.S.C. § 922(a)(1)(A).

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested criminal complaint and does not set forth all of my knowledge about this matter.

## PROBABLE CAUSE

### The July 2024 Controlled Purchase

5. On July 9, 2024, BROWN contacted the CI and instructed them to meet him in the parking lot of a store in Tewksbury, Massachusetts.[1] At approximately 3:32 p.m., BROWN transmitted a text message to the CI advising that BROWN was present in the parking lot. Surveillance units observed BROWN operating a Plumbing Company commercial van. A records check revealed that this vehicle was registered to the Plumbing Company.[2]

---

[1] Unless indicated otherwise, agents employed the following procedures for each controlled purchase described herein: a) each of the controlled purchases described below were audio/video recorded and were conducted while the CI was under constant surveillance of law enforcement; b) in each instance, the CI was searched prior to and following each purchase for any contraband and/or unaccounted-for monies with negative results; c) each of the purchases were completed utilizing an ATF undercover vehicle and pre-recorded United States Currency ("USC"), which were provided to the CI by agents on scene; and d) following each controlled purchase, the CI was debriefed and provided the purchased firearms to agents.

[2] The name of the Plumbing company is known to law enforcement. BROWN is an employee of the company.

6. Investigators observed BROWN meet with the CI at the location. During this meeting, BROWN exchanged a privately made[3] short-barreled rifle and 30 rounds of 5.56 caliber ammunition for $1,500 in USC. The firearm is pictured below:



**The August 2024 Controlled Purchase**

7. On August 27, 2024, BROWN contacted the CI and instructed them to meet him at a Mall in Billerica. Investigators observed BROWN in the parking lot operating a Plumbing Company van.

8. At approximately 4:34 p.m., the CI arrived and parked next to BROWN's vehicle. BROWN exited the driver's side of his vehicle carrying a black bag and entered the front passenger seat of the CI's vehicle. BROWN then exchanged one privately made short-barreled rifle and one magazine containing 20 rounds of 5.56 caliber ammunition for $1,600 in USC. At approximately 4:48 p.m., BROWN exited the CI's vehicle, returned to his van, and departed the area. Investigators subsequently observed BROWN return to his residence in Billerica, Massachusetts.

9. The firearm and magazine are pictured below:

[3] Based on my training and experience, a privately made firearm, commonly referred to as a "PMF" or "ghost gun", is a firearm, including a frame or receiver, that has been completed, assembled, or otherwise produced by a person other than a licensed firearm manufacturer and without a serial number placed by a licensed manufacturer at the time the firearm was produced.




**The October 2024 Controlled Purchase**

10. On October 22, 2024, BROWN contacted the CI and instructed the CI to meet him in a store parking lot in Lowell, Massachusetts. At approximately 1:42 p.m., BROWN arrived at the location operating a Plumbing Company commercial van.

11. BROWN exited the vehicle, retrieved a dark-colored bag from the rear of the van, and entered the front passenger seat of the CI's vehicle. Inside, BROWN exchanged two privately made 7.62 caliber rifles, two ten-round magazines, and nine rounds of 7.62 caliber ammunition for $5,000 in USC.

12. At approximately 1:48 p.m., BROWN exited the CI's vehicle, returned to his van, and departed the area. The firearms are pictured below:




**The March 2025 Controlled Purchase**

13. On March 27, 2025, BROWN contacted the CI and instructed the CI to meet him at a Mall in Billerica.

14. On that date, investigators observed BROWN exiting one of the stores and returning to a Plumbing Company commercial van. The CI backed into a parking space next to

BROWN's vehicle. BROWN exited his vehicle, walked to the rear, removed a black duffel bag, and entered the front passenger seat of the CI's vehicle.

15. While inside, BROWN discussed future transactions with the CI and stated that he was attempting to acquire machine gun conversion device parts. When the CI asked if BROWN was selling to anyone else, BROWN replied that he was not, explaining that it was risky enough selling to the CI. BROWN further stated that he had been to prison and was not going back, adding that if he were caught, "it's going to suck for the officer(s), I'll put a pack of bubble gum in my waistband." Based on my training and experience, I understand BROWN's statement to mean that, if approached or arrested by law enforcement, BROWN would make it appear as though he was armed, thereby creating a risk that officers would perceive an imminent threat and use deadly force.

16. BROWN then exchanged two privately made short-barreled rifles, approximately 17 rounds of .223 caliber ammunition, approximately 20 rounds of 5.56 caliber ammunition, one 23-round plastic rifle magazine, and one 27-round plastic rifle magazine for $6,000 in USC. At approximately 5:30 p.m., BROWN exited the CI's vehicle, returned to his van, and departed the area.

17. The firearms are pictured below:





18. Agents determined that the SBR was actually 5.56 caliber, not 7.62 caliber as BROWN had represented to the CI. On or about March 27, 2025, the CI contacted BROWN about this discrepancy. BROWN offered not to charge the CI for another 7.62 caliber rifle, which BROWN provided during an August 7, 2025, exchange described below.

**The August 2025 Controlled Transfer**

19. On August 7, 2025, BROWN contacted the CI and directed the CI to meet him at BROWN's residence in Billerica. At approximately 4:20 p.m., the CI arrived.

20. Investigators observed BROWN exit the residence carrying a black jacket. Inside the jacket was a 7.62 caliber short-barrel rifle, which BROWN provided to the CI as compensation for overcharging during a previous controlled purchase. BROWN engaged the CI in a brief conversation regarding future transactions before concluding the meeting. The firearm is pictured below, along with 7.62 caliber ammunition:



**December 2025 Controlled Purchase**

21. On December 17, 2025, BROWN contacted the CI and directed the CI to meet him at his residence in Billerica, Massachusetts. At approximately 4:25 p.m. the CI arrived.

22. Investigators observed BROWN exiting his residence carrying a black bag. Inside the black bag was a Privately Made Firearm (PMF) Short Barrel Rifle (SBR) with ammunition for $2,600 in USC, which BROWN provided to the CI. BROWN engaged the CI in a brief conversation regarding future transactions before concluding the meeting. The firearm and ammunition are pictured below:



**October 2026 Controlled Purchase**

23. On October 28, 2026, BROWN contacted the CI and directed the CI to meet him at his residence in Billerica, Massachusetts. At approximately 5:02 p.m. the CI arrived.

24. Investigators observed BROWN exiting his residence carrying a black bag and getting in the passenger seat of the CI's vehicle. Inside the black bag was a PMF .300 Blackout rifle, PMF 6mm rifle, a large capacity magazine with seven rounds of 6.5mm ammunition, and a suppressor for $5,000 in USC, which BROWN provided to the CI. BROWN and the CI engaged in brief conversation regarding the future purchase of an AK-47 style rifle before concluding the meeting. The firearms and ammunition are pictured below:



**Background On Brown**

25. Investigators searched the ATF database containing a list of all licensed federal firearms dealers ("FFL"). BROWN is not an FFL nor was he at any time BROWN sold firearms to the CI.

26. Investigators also searched to determine if BROWN had a license to carry firearms in Massachusetts or firearms identification card. BROWN does not possess a license to carry firearms in Massachusetts or a firearm identification card.

27. BROWN has multiple prior entries on his criminal history, which includes a conviction for Assault and Battery with a Dangerous Weapon in Essex Superior Court, Docket 2005000998002, for which he was sentenced to a term of three to five years of incarceration.

**Interstate Commerce**

28. Multiple rifles that were purchased from BROWN contained parts that were stamped with the Bear Creek Arsenal logo. Bear Creek Arsenal manufactures firearm components such as barrels, upper receivers, and bolt carrier groups at its facility in Sanford, North Carolina, and subsequently distributes them to consumers and retailers across state lines. Bear Creek Arsenal does not have any facilities in the Commonwealth of Massachusetts. Therefore, rifle components used to produce firearms which BROWN sold to the CI, came from outside Massachusetts.

29. Additionally, BROWN has provided the CI with approximately 117 rounds of ammunition (stamped with the following company names: Lake City, Frontier, Tula, and Fiocchi). There are no businesses engaged in the commercial manufacturing of ammunition, ammunition components, or finished rounds within the state of Massachusetts. None of the companies whose logos are stamped on the ammunition have production facilities in Massachusetts. Accordingly, the ammunition that BROWN provided the CI necessarily traveled in interstate commerce.

**CONCLUSION**

30. BROWN knowingly possessed firearms and ammunition after having been convicted of a crime punishable by imprisonment for a term exceeding one year, in violation of 18 U.S.C. § 922(g)(1), and, engaged in the business of dealing in firearms without a federal firearms license, in violation of 18 U.S.C. § 922(a)(1)(A).

31. Accordingly, I respectfully request that the Court issue a criminal complaint charging BROWN with these offenses.

Respectfully submitted,

Jeremy Brisson
Special Agent
Bureau of Alcohol, Tobacco,
Firearms and Explosives
(ATF)

Subscribed and sworn to via telephone in accordance with Federal Rule of Criminal Procedure 4.1 on this 10th day of November 2026.

4:50 p.m.

HONORABLE DAVID H. HENNESSY
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS